# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MICHAEL PHELPS and TAMMY PHELPS,

      Plaintiffs,

                                 Case No. 09-cv-12311
                                 Hon. Nancy G. Edmonds

vs.                                 Magistrate Judge Donald A. Scheer

THE CITY OF ECORSE, a municipal corporation,
CHIEF JERRY COPELAND, in his official and
individual capacities; SERGEANT CORNELIUS
HERRING, CORPORAL TIMOTHY SASSAK,
POLICE OFFICERS JOHN DOE 1-5, POLICE
SUPERVISORS ROE 1-5, DOWNRIVER
MUTUAL AID, a Michigan entity created under the
Urban Cooperation Act of 1967, a municipal
corporation, TEAM LEADER STEVEN
McINCHAK and JIM DOE 1-5 DOWNRIVER
SWAT officers, acting in their individual and
supervisory capacities.

      Defendants.

_____/

<table>
<tr><td>

William H. Goodman (P14173)
Julie H. Hurwitz (P34720)
Kathryn Bruner James (P71374) *Attorneys for Plaintiff*
Goodman and Hurwitz, P.C.
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170
Fax: (313) 567-4827


Ethan Vinson (P26608)
Cummings, McClorey, Davis & Acho, P.L.C.
*Attorneys for Defendants City of Ecorse and Herring*
33900 Schoolcraft
Livonia, MI 48150
(734) 261-2400
Fax: (734) 261-4510

</td><td>

Donald J. Gasiorek (P24987)
Gasiorek, Morgan & Greco, P.C.
*Attorney for Defendant Timothy Sassak*
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(248) 865-0001


Roger A. Smith (P27722)
Garan Lucow Miller, P.C.
*Attorney for Defendant McInchak, only*
1111 W. Long Lake Road, Suite 300
Troy, MI 48098
(248) 641-7600
(248) 641-0222 fax

</td></tr>
</table>

_____/

## CORRECTED FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

<u>**CORRECTED FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

NOW COME Plaintiffs MICHAEL PHELPS and TAMMY PHELPS, by and through their attorneys and for their First Amended Complaint, do hereby allege as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiffs, MICHAEL PHELPS and TAMMY PHELPS, seek relief for Defendants' violations, under color of state law, of their rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of Michigan, on or about September 25, 2008.

2. Defendant CITY OF ECORSE (hereafter "ECORSE") is a municipal entity, located in the State of Michigan. The CITY OF ECORSE Police Department is a unit of the Defendant ECORSE, which at all times herein did control the operations of its Police Department.

3. Defendant CHIEF JERRY COPELAND (hereafter "COPELAND") was, at all times herein the Chief of Police for the City.  As such, he was the principal decision maker and/or official policy-maker for Defendant ECORSE for purposes of the policies and practices of its police department, with respect to searches, arrests, investigations, hiring, training, supervision and discipline.  He is sued in both his official and individual capacities, and at all times herein was acting under color of law and within the scope of his authority as a CITY OF ECORSE official and policymaker.

4. SERGEANT CORNELIUS HERRING (hereafter "HERRING") was at all times herein a supervisory Ecorse police officer, employed by and authorized to act on behalf of

Defendant CITY, and at all times herein acting under color of law and within the scope of his supervisory authority as a CITY OF ECORSE Police Officer.

5.      Defendant CORPORAL TIMOTHY SASSAK (hereafter "SASSAK") was at all times herein an Ecorse police officer, employed by and authorized to act on behalf of Defendant CITY, and at all times herein acting under color of law and within the scope of his authority as a CITY OF ECORSE Police Officer.

6.      The ROE Defendants were at all times herein Ecorse supervisory police officers, employed by and authorized to act on behalf of Defendant CITY, and at all times herein were acting under color of law and within the scope of their supervisory authority as CITY OF ECORSE Police Officers.

7.      The JOHN DOE Defendants were at all times herein Ecorse police officers, employed by and authorized to act on behalf of Defendant CITY, and at all times herein were acting under color of law and within the scope of their authority as CITY OF ECORSE Police Officers.

8.      Defendant DOWNRIVER MUTUAL AID is a municipal corporation and/or *quasi* municipal corporation, created under the Urban Cooperation Act of 1967. It operates a law enforcement service known as DOWNRIVER SWAT (Special Weapons and Tactics Team). Hereafter these various organizations will be identified as "DOWNRIVER MUTUAL AID".

9.      Defendant TEAM LEADER STEVEN McINCHAK (hereafter "McINCHAK") was at all times herein a supervisory SWAT police officer, employed by and authorized to act on behalf of Defendant DOWNRIVER MUTUAL AID, and at all times herein were acting under color of law and within the scope of his authority.

10.     The JIM DOE Defendants were at all times herein SWAT agents and police officers authorized to act on behalf of Defendant DOWNRIVER MUTUAL AID, and at all times herein were acting under color of law and within the scope of their authority.

11.     Theses aforementioned Defendants, acting individually, as well as jointly and severally, did cause Plaintiffs MICHAEL PHELPS and TAMMY PHELPS to be subjected to an unlawful and unreasonable search and seizure of their premises, false arrest, and excessive and unreasonable force, causing them serious emotional and psychological injuries.

12.     Said Defendants also caused Plaintiffs MICHAEL and TAMMY PHELPS to be subjected to intentional infliction of emotional distress in violation of Defendants' duties and obligations under Michigan law such that they intentionally and/or recklessly engaged in extreme and outrageous conduct which resulted in severe emotional distress, all in avoidance of governmental immunity under state law.

13.     Plaintiffs seek compensatory and punitive damages, declaratory relief, an award of attorney fees and costs, and such other and further relief as the Court may deem proper.

**JURISDICTION**

14.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343 (3) and (4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

15.     Plaintiffs' claims for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

16.     Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28

U.S.C. §367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

17.     Venue is proper in the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

## JURY DEMAND

18.     Plaintiffs demand a trial by jury in this action on each and every one of their claims.

## PARTIES

19.     Plaintiffs MICHAEL PHELPS and TAMMY PHELPS are citizens of the United States, and are and were at all times relevant herein residents of the City of Ecorse, County of Wayne, State of Michigan.

20.     Defendant ECORSE is a municipal corporation authorized under and created by the laws of the State of Michigan and is authorized by law to maintain and operate a Police Department.   Through its agents, supervisors, operating officers, Council, Departments, Commissions, Boards and Committees, its high level policy makers, in particular Defendant COPELAND, herein, Defendant ECORSE establishes, promulgates and implements the policies of the Ecorse Police Department with regard to hiring, training, supervision and discipline of the employees, officers and agents of said Department.

21.     Defendants COPELAND, HERRING, SASSAK, JOHN DOE Defendants, and ROE Defendants are and at all times herein were employees of the Defendant ECORSE acting under color of law and their authority as police officers, pursuant to the municipal customs, policies and practices of Defendant ECORSE, as established, promulgated, implemented and maintained by the Ecorse Police Department.

22.     Defendant DOWNRIVER MUTUAL AID is a municipal corporation and or *quasi* municipal corporation authorized under and created by the laws of the State of Michigan. It is authorized by law to maintain and operate law enforcement agencies.  Through its agents, supervisors, operating officers, Departments, Commissions, Boards and Committees, and its high level policy makers, Defendant DOWNRIVER MUTUAL AID establishes, promulgates and implements the policies of the SWAT team with regard to hiring, training, supervision and discipline of the employees, officers, supervisors and agents of said SWAT team.

23.     Defendants McINCHAK and the JIM DOE Defendants at all times herein were agents and officers of the Defendant SWAT acting under color of law and their authority as police officers, pursuant to the municipal customs, policies and practices of Defendant DOWNRIVER MUTUAL AID, as established, promulgated, implemented and maintained by it.

24.     As such, at approximately 9:30 p.m. on September 25, 2008 and prior thereto, Defendants COPELAND, HERRING and ROE Defendants were the supervisors of Defendant SASSAK and of the JOHN DOE Defendants, at all times acting in both their individual and supervisory capacities.

25.     As such, at approximately 9:30 p.m. on September 25, 2008, Defendant McINCHAK was at all times the supervisor of the JIM DOE Defendants.

26.     At all times relevant herein, each of the individual Defendants acted under color of law in the course and scope of their duties and functions as agents, employees, servants and/or officers of the Defendants ECORSE and SWAT in engaging in the conduct described herein.

27.     At all times relevant herein, the individual Defendants violated rights clearly established under the Constitution of the United States, in particular under the Fourth and Fourteenth Amendments, of which reasonable police officers and/or police supervisors acting under their respective circumstances knew or should have known.

## STATEMENT OF FACTS

28.     On September 25, 2008, at approximately 9:30 p.m., Plaintiffs MICHAEL PHELPS and TAMMY PHELPS were at their home, a free standing house, located at 19 Florence, River Rouge, Michigan.

29.     The Plaintiffs' home at 19 Florence had been rented and occupied by them for more than five (5) years, along with Plaintiff TAMMY PHELPS' two children/Plaintiff MICHAEL PHELPS' step children, Brandon Hoskins and Melissa Hoskins.

30.     The Plaintiffs' house at 19 Florence was clearly and plainly the *fourth* dwelling west of West Jefferson and was located next door to the house located at 17 Florence, River Rouge, Michigan.

31.     The house located at 17 Florence was clearly and plainly the *third* dwelling west of West Jefferson.

32.     At the aforementioned time and place, based upon alleged information provided by a "confidential informant" ("CI") who claimed to have purchased illegal narcotics at 17 Florence, Defendants SASSAK and HERRING obtained a search warrant that allowed law

enforcement officers lawful entry only at the dwelling located at *17* Florence, "the *third* dwelling west of West Jefferson." (emphasis added)

33.    In obtaining the aforementioned warrant, the Defendants SASSAK and HERRING stated under oath in the Affidavit and Request for Search Warrant that they had actually observed the confidential informant both enter and leave 17 Florence Street, the third dwelling from Jefferson, within the 48 hour period prior to September 25, 2008, and that he entered while in possession of marked currency and without any illegal narcotics and exited without the currency but in possession of illegal narcotics.

34.    The statements that the Defendants HERRING and SASSSAK had actually seen the confidential informant enter and exit from 17 Florence Street were false statements and were made to obtain the warrant so to enter 17 Florence Street.  This false statement was made pursuant to a custom, policy and practice of the Defendant ECORSE.

35.    On September 25, 2008, based on the aforementioned false statements, a search warrant was issued.

36.    Prior to the execution of said search warrant, Defendants HERRING and SASSAK took affirmative steps to involve the Defendant DOWNRIVER MUTUAL AID, acting through its SWAT team, in the raid on the house located at 17 Florence Street.

37.    Prior to the execution of the search warrant intended and authorized for execution at 17 Florence, agents of Defendants DOWNRIVER MUTUAL AID and ECORSE, including but not limited to Defendants McINCHAK, HERRING, SASSAK, JOHN DOES and JIM DOES, held a pre-raid briefing session in which it was agreed that, by description, the wrong house, 19 Florence, would be entered by members of the SWAT team notwithstanding the fact

that the officers had no warrant or permission to enter that location nor any reasonable basis on which to do so.

38.     Nor were any steps or measures taken to assure that all members of the SWAT team entered the right house.

39.     Further, at the briefing session the members of the SWAT team were give a false identification of the house to be raided notwithstanding the fact defendants failed to review, scrutinize, observe or, in any way consider the following:

    a.  Photographs of the location, neighborhood or area of the raid;

    b.  Maps of the location, neighborhood or area of the raid;

    c.  Diagrams of the location, neighborhood or area of the raid;

40.     Notwithstanding the clear description and address of the house in the search warrant, Defendant SASSAK, at all times acting as an Ecorse police officer and under color of law, stated and instructed Defendant McINCHAK and other SWAT officers on the day of the actual execution of the search warrant as follows:

    a.  That he had actually observed the confidential informant enter the rear door of
        the building which is 19 Florence, the *fourth* dwelling west of Jefferson, the
        Plaintiffs' home; and

    b.  That this dwelling, 19 Florence, is the home that should be entered by SWAT
        officers, pursuant to the Search warrant referenced above.

41.     Defendant SASSAK intentionally, deliberately and falsely so stated and instructed Defendant McINCHAK and other SWAT officers, despite the fact that he never observed the confidential informant enter or leave from 19 Florence or indeed from any location whatsoever.

42.     Subsequently and as a proximate result of their deliberate indifference, all Defendants wrongly and unreasonably undertook, planned and executed a raid of the premises located at *19* Florence, the *fourth* dwelling west of West Jefferson.

43.     At all times herein, Defendants ECORSE and COPELAND knew and/or were on actual notice that Defendant SASSAK was likely to engage, as a police officer, in conduct likely to lead to police actions by himself and other police officers that would, in all probability, result in the violations of the constitutional rights of others.

44.     At all times herein, Defendants ECORSE and COPELAND knew and/or were on actual notice that Defendant SASSAK was likely to make statements that were dishonest, false, inaccurate and, as a result, likely to lead to police actions by himself and other police officers that would, in all probability, result in the violations of the constitutional rights of others.

45.     Notwithstanding the aforementioned knowledge by Defendants ECORSE and COPELAND, these Defendants failed to adequately supervise, train and/or discipline Defendant SASSAK, to effectively prevent him from engaging in conduct or making statements that were dishonest, false, inaccurate and, as a result, likely to lead to police actions by himself and other police officers that would, in all probability, result in the violations of the constitutional rights of others.

46.     In the course of, and after becoming aware of the unlawful entry, as set forth above, the individual Defendants, SASSAK, HERRING, McINCHAK, JOHN DOES, JIM DOES and ROES, acting in concert, supervised, planned, witnessed, participated in and/or engaged in the following excessive and unreasonable actions:

   a. They burst into the Plaintiffs' home without probable cause and without permission or a valid warrant;

   b. They raided the Plaintiffs' home using large numbers of Defendant JIM DOE police officers, police vehicles, bright lights and loud noise, all in ways that were designed to publicly embarrass the Plaintiffs and were highly audible, visible and public in the Plaintiffs' neighborhood and amongst their neighbors;

   c. They ordered the Plaintiffs to the floor, at gunpoint, forcefully grabbing Plaintiffs, and throwing them to the floor;

**d.** Even after realizing they were in the wrong house, they continued to hold Plaintiffs prisoners in their own house, all the while pointing their guns at Plaintiffs and their children;

**e.** They pushed the Plaintiff MICHAEL PHELPS' face and head with the barrel of a gun whenever he lifted his head off the ground;

**f.** They handcuffed the Plaintiff TAMMY PHELPS;

**g.** They searched the Plaintiffs' home without probable cause or the permission or consent of the Plaintiffs; and

**h.** They spoke loudly to the Plaintiffs and their family in rude and insulting terms.

47.     Almost immediately after their unlawful entry into the Plaintiffs' home, the Defendants were aware of their error, i.e. that they had unreasonably raided and entered the wrong house. Nonetheless, knowing full well the unlawfulness of their actions, they persisted in the actions set forth above in Paragraphs 46, herein above, for an extended and excessive period of time, long after they knew that they had entered the wrong house and had no right to be there.

48.     During the entire period of time that the Defendants unlawfully occupied the Plaintiffs' home, the Plaintiffs were unlawfully and at gunpoint forced and coerced against their will to stay in and therefore confined to two spaces within their house – on the floor and then on the sofa with the intent of depriving them of their personal liberty or freedom of movement.

49.     Further, while held at gunpoint, the Plaintiffs were not permitted to:

**a.**  Enter or leave their home;

**b.**  Move freely about within their home;

**c.**  Speak freely to the occupying police officers; or

**d.**  Ask questions of the police officers who were holding them and occupying their house.

50.     At all times herein the confinement of the Plaintiffs to their home and to specific spaces within their own home was without any reasonable suspicion to so confine them, let alone probable cause.

51.     At all times herein, the force and threat of force that was used by the individual Defendants acting in concert, jointly and severally, as alleged herein above, to enter the Plaintiffs' home, hold them and their family at gunpoint, restrain them and falsely imprison them in their own home, including the use of handcuffs on Plaintiff TAMMY PHELPS and to arrest them during the period that they were detained was unnecessary, excessive and unreasonable.

52.     The individual Defendant's acts and omissions described above, all while acting under color of law and pursuant to customs, policies and/or practices of Defendant CITY OF ECORSE, through its Police Department, and Defendant DOWNRIVER MUTUAL AID through its SWAT team, were unreasonable, excessive and performed in violation of Plaintiffs' rights, secured by the Fourth and Fourteenth Amendments to the United States Constitution.

53.     As a direct and proximate result of the acts and conduct of the Defendants complained of herein, Plaintiffs have sustained the following injuries and damages, among others:

> **a.** Emotional and psychological injury, including but not limited to post traumatic stress disorder, anxiety and depression, resulting in greatly increased marital tension;
>
> **b.** The need to take medications such as Xanax and Zoloft and to be subjected to the side effects thereof;
>
> **c.** Accompanying physical symptoms, including but not limited to, sleep disturbance, headaches and extreme nervousness;
>
> **d.** Pain, suffering, mental anguish, public and private humiliation, embarrassment and emotional distress, past and future;
>
> **e.** Deprivation of liberty and property; and
>
> **f.** Medical and pharmaceutical expenses, past and future.

## CLAIMS

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – FOURTH AMENDMENT
### UNLAWFUL ENTRY, SEARCH AND SEIZURE

**54.**     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 53, as if fully set forth herein.

**55.**     The Defendants' acts and conduct described above, as set forth in detail at Paragraphs 28-46, all under color of law and pursuant to the customs, policies and practices of Defendants SWAT and ECORSE, did violate the Plaintiffs' rights to be free from unlawful and unreasonable entry onto and into their premises as well as to be free from unreasonable, excessive and unlawful searches and seizures, as secured by the Fourth and Fourteenth Amendments to the United States Constitution.

**56.**     This aforementioned unreasonable entry onto their premises and the unreasonable, excessive and unlawful search and seizure occurred pursuant to and under the direct supervision of Defendant HERRING and Defendant McINCHAK.

**57.**     As a direct and proximate result of the acts and conduct of the Defendants complained of herein, Plaintiffs have sustained the following injuries and damages, among others:

      **a.**   Physical injury, loss of liberty;

      **b.**    Emotional and psychological injury, including but not limited to anxiety and depression, resulting in greatly increased marital tension;

      **c.**   The need to take medications such as Xanax and Zoloft and to be subjected to the side effects thereof;

      **d.**   Accompanying physical symptoms, including but not limited to, sleep disturbance, headaches and extreme nervousness;

    **e.**   Pain, suffering, mental anguish, public and private humiliation, embarrassment and emotional and psychological distress, past and future; and

    **f.**   Medical and pharmaceutical expenses, past and future.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – FOURTH AMENDMENT**
**FALSE ARREST/FALSE IMPRISONMENT**

    **58.**   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 57, as if fully set forth herein.

    **59.**   At all times herein, Defendants confined and/or caused the confinement of the Plaintiffs, through coercion, involuntarily and against their will, to two areas of their home – first, on the floor and then, later, on the sofa.   As a part of this coercion, Defendants forced them, or caused them to be forced, to remain at gunpoint and, in the case of Plaintiff TAMMY PHELPS, to be handcuffed.

    **60.**   Once Plaintiffs were falsely arrested, Defendants intentionally falsely imprisoned them, thereby depriving them, against their will and without lawful authority, of their personal liberty and freedom of movement, using actual physical force and the threat of force.

    **61.**   The Defendants' acts and conduct described above did violate the Plaintiff's right to be free from unreasonable, excessive and unlawful seizures, as secured by the Fourth and Fourteenth Amendments to the United States Constitution. The false arrest, false imprisonment and other forms of unreasonable seizure of the Plaintiffs were undertaken by the Defendants in the absence of probable cause so to do.

    **62.**   This aforementioned unlawful arrest and imprisonment occurred pursuant to and under the direct supervision of Defendants HERRING and McINCHAK.

63.     As a direct and proximate result of the acts and conduct of the Defendants complained of herein, Plaintiffs have sustained the following injuries and damages, among others:

      **a.**   Physical injury, loss of liberty;

      **b.**   Deprivation of liberty and property;

      **c.**   Emotional and psychological injury, including but not limited to anxiety and depression, resulting in greatly increased marital tension;

      **d.**   The need to take medications such as Xanax and Zoloft and to be subjected to the side effects thereof;

      **e.**   Accompanying physical symptoms, including but not limited to, sleep disturbance, headaches and extreme nervousness;

      **f.**   Pain, suffering, mental anguish, public and private humiliation, embarrassment and emotional distress, past and future; and

      **g.**   Medical and pharmaceutical expenses, past and future.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – EXCESSIVE FORCE

64.     Plaintiff incorporates by reference the allegations set forth in Paragraphs1through 63, as if fully set forth herein.

65.     The individual Defendants' acts and conduct, as fully described above --including but not limited to the pointing of guns at Plaintiffs and their family, the grabbing of Plaintiff TAMMY PHELPS and forcing her onto the floor and the pushing of the Plaintiff MICHAEL PHELPS in the head and face with a gun barrel -- further violated Plaintiffs' rights to be free from unreasonable and excessive physical force and seizure as secured by the Fourth and Fourteenth Amendments to the United States Constitution.

66.     This aforementioned unreasonable and excessive physical force and seizure was imposed by Defendants acting under color of state law and pursuant to the customs, policies and practices of Defendants ECORSE and DOWNRIVER MUTUAL AID.

67.     This aforementioned unreasonable and excessive use of force occurred pursuant to and under the direct supervision of Defendants HERRING and McINCHAK.

68.     As a direct and proximate result of the acts and conduct of the Defendants complained of herein, Plaintiffs have sustained the following injuries and damages, among others:

    **a.**  Physical injury, loss of liberty;

    **b.**  Deprivation of liberty and property;

    **c.**  Emotional and psychological injury, including but not limited to anxiety and depression, resulting in greatly increased marital tension;

    **d.**  The need to take medications such as Xanax and Zoloft and to be subjected to the side effects thereof;

    **e.**  Accompanying physical symptoms, including but not limited to, sleep disturbance, headaches and extreme nervousness;

    **f.**  Pain, suffering, mental anguish, public and private humiliation, embarrassment and emotional distress, past and future; and

    **g.**  Medical and pharmaceutical expenses, past and future.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 –*MONELL* CLAIM**
**AS TO DEFENDANTS ECORSE AND SWAT**

69.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 68, as if fully set forth herein.

**70.**     At all times herein the Defendant ECORSE established, promulgated,

implemented and maintained customs, policies and/or practices with regard to the Ecorse Police

Department.

**71.**     At all times herein the Defendant DOWNRIVER MUTUAL AID established,

promulgated, implemented and maintained customs, policies and/or practices with regard to the

practices and policies of its SWAT team.

**72.**     At all times herein Defendants COPELAND, ECORSE and DOWNRIVER

MUTUAL AID established, promulgated, implemented and maintained the following customs,

policies and/or practices:

> **a.**  Inadequately training, supervising and/or disciplining those police officers and supervisors Defendants knew, or about whom were on actual notice, who used or had been known to use excessive and unreasonable practices with regard to the execution of search warrants;
>
> **b.**  Inadequately training, supervising and/or disciplining those police officers and supervisors Defendants knew, or about whom were on actual notice, who used or had been known to undertake and engage in unlawful, unreasonable and excessive seizures, entries and searches into and onto the premises of others;
>
> **c.**  Inadequately training, supervising and/or disciplining its police officers and supervisors with regard to the circumstances and procedures under which to undertake seizures, entries, arrests and searches into and onto the premises of others;
>
> **d.**  Inadequately training, supervising and/or disciplining its police officers and supervisors with regard to the circumstances and procedures under which to employ physical force such as the drawing and pointing of firearms, the forcing of persons to the ground and the pushing of persons with the barrels of firearms;
>
> **e.**  Inadequately training, supervising and/or disciplining its police officers and supervisors with regard to the circumstances and procedures under which to involuntarily and coercively confine and thereby falsely arrest and imprison persons whom they know or should know to have done nothing wrong and, in fact, to be the victims of an unlawful entry and search;

    **f.**  Inadequate pre-raid briefing as a means of providing adequate supervision, training and discipline, as evidenced by the facts alleged in Paragraphs 37, 38 and 39 herein above.

**73.**    At all times herein Defendants COPELAND and ECORSE, in addition,

established, promulgated, implemented and maintained the following customs, policies and/or

practices:

    **a.**  Hired, trained, promoted and retained Defendant SASSAK as an Ecorse police officer notwithstanding that they knew or should have known that he was deliberately indifferent to the rights of others, in particular those of the Plaintiffs herein, as secured by the Fourth and Fourteenth Amendments, as evidenced by the following:

        **i.**  When questioned by other officers, including Ecorse officers as to why he had identified the wrong house for entry by the SWAT team for entry, SASSAK responded, "F*** it, it's not my money, it's the City's money."

        **ii.**  Notwithstanding this statement, there was no corrective action taken by the Defendant ECORSE.  Rather, the statement by Defendant SASSAK, in effect that it was of no importance that the Fourth Amendment Constitutional rights had been violated by police officers, was adopted, accepted and ratified as policy by Defendant Ecorse.

    **b.**  Failed to supervise, discipline and train Defendants SASSAK and HERRING and other Ecorse police officers, notwithstanding that they knew or should have known that SASSAK and others were deliberately indifferent to the rights of others, in particular those of the Plaintiffs herein, as secured by the Fourth and Fourteenth Amendments and notwithstanding its knowledge of the events set forth in Paragraph 73(a) above.

**74.**    At all times herein, Defendant COPELAND affirmatively condoned and ratified

the unconstitutional conduct of  Ecorse Police Officers, including but not limited to Defendant

SASSAK, by instructing his supervisory officer, Defendant HERRING, not to document either

the entry into the wrong house or the improper conduct by Defendant SASSAK which resulted in

the violation of Plaintiffs' constitutional rights, to wit:

    **a.**  When Defendant COPELAND was told that there had been a wrongful entry into the Plaintiffs' home and was asked by Defendant HERRING whether a report should be

written regarding that incident, he refused to instruct HERRING to do so, in an attempt to cover this matter up;

**b.** When Defendant COPELAND was told that what Defendant SASSAK had said when questioned about the wrongful entry into the Plaintiffs' home, i.e. "F*** it, it's not my money, it's the City's money" and then was asked by Defendant HERRING whether a report should be written regarding that statement, as a matter of policy of the Ecorse Police Department, he refused to instruct HERRING to do so in an attempt to cover this matter up, rather than to appropriately supervise, train and discipline SASSAK and other Ecorse officers; and

**c.** Defendant COPELAND deliberately refused to instruct, supervise and, particularly, discipline SASSAK, and other Ecorse police officers as a matter of explicit policy of the Ecorse Police Department, refused to do so in an attempt to cover up this incident and, as a matter of the explicit policy of the Defendant ECORSE, to generally cover up misconduct by Ecorse police officers.

**75.** Further, at all times herein Defendants COPELAND and ECORSE established, promulgated, implemented and maintained the following customs, policies and/or practices:

**a.** Inadequately training, supervising and/or disciplining its police officers with regard to the proper methods and procedures for conducting a "controlled buy" in preparation for obtaining a search warrant; and

**b.** Inadequately training, supervising and/or disciplining those police officers with regard to making critical statements in warrant applications and affidavits that were a part of the warrant application, they knew or should have known were false, as a way to obtain search warrants.

**76.** Each of the policies aforementioned in Paragraphs 66, 72, 73 and 75 above herein was instrumental and a driving force in the violations of rights sustained by MICHAEL PHELPS and TAMMY PHELPS, as set forth herein.

**77.** Each of the aforementioned policies of inadequate training, supervision and discipline of the individual Defendants and others was known to the Defendants ECORSE and SWAT as highly likely and probable to cause violations of constitutional rights of members of the public in general and the Plaintiffs herein in particular.

19

78.     As a direct and proximate result of the acts and conduct of the Defendants complained of herein, Plaintiffs have sustained the following injuries and damages, among others:

**a.**   Physical injury, loss of liberty;

**b.**   Deprivation of liberty and property;

**c.**   Emotional and psychological injury, including but not limited to anxiety and depression, resulting in greatly increased marital tension;

**d.**   The need to take medications such as Xanax and Zoloft and to be subjected to the side effects thereof;

**e.**   Accompanying physical symptoms, including but not limited to, sleep disturbance, headaches and extreme nervousness;

**f.**   Pain, suffering, mental anguish, public and private humiliation, embarrassment and emotional distress, past and future; and

**g.**   Medical and pharmaceutical expenses, past and future.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs demand the following relief jointly and severally against all Defendants:

**(a)** A declaration that Defendants violated the federal rights of Plaintiffs;

**(b)** Compensatory damages for the physical, emotional, and economic injuries suffered by Plaintiffs  by reason of defendants' unlawful and unjustified conduct, in an amount fair, just and reasonable and in conformity with the evidence at trial;

**(c)** Punitive and exemplary damages as to the individual defendants to the extent allowable by law;

**(d)** Attorneys fees and costs as allowed, pursuant to 42 U.S.C. §1988; and

**(e)** Such other and further relief as appears just and proper.

Respectfully submitted,

GOODMAN & HURWITZ, P.C.

*/s/ William H. Goodman_____*
William H. Goodman (P14173)

*/s/ Julie H. Hurwitz_____*
Julie H. Hurwitz (P34720)

*/s/ Kathryn Bruner James_____*
Kathryn Bruner James (P71374)

1394 East Jefferson Ave,
Detroit, Michigan 48207
(313) 567-6170
*Attorneys for the Plaintiff*

Dated:  **April 28, 2010**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **April 28, 2010,** I electronically filed the foregoing Plaintiffs'

*Corrected First Amended Complaint* with the Clerk of the Court using the ECF system, which

will send notification of such filing to all attorneys of record.

*s/William H. Goodman_____*
Goodman & Hurwitz, P.C.
*Attorneys for Plaintiffs*
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170
bgoodman@goodmanhurwitz.com
 (P14173)